**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-40117

(Summary Calendar)
_____

JOSEPH H. WILLIAMS,

                              Plaintiff-Appellant,

          versus

ALFONSO CASTILLO, ET AL.,

                              Defendants-Appellants.

_____

Appeal from the United States District Court
For the Eastern District of Texas
(6:94 CV 569)
_____

(August 23, 1995)

Before SMITH, EMILIO M. GARZA, and PARKER, Circuit Judges.

PER CURIAM:[*]

     Joseph Williams, an inmate of the Texas Department of Criminal
Justice's Institutional Division ("TDCJ-ID"), filed a pro se, in
forma pauperis appeal of the district court's dismissal of his
civil rights suit against prison officials and the Attorney General
of Texas, Dan Morales.  We affirm.

                              I

_____

     [*]     Local Rule 47.5.1 provides:  "The publication of opinions that have
no precedential value and merely decide particular cases on the basis of well-
settled principles of law imposes needless expense on the public and burdens on
the legal profession."  Pursuant to that Rule, the Court has determined that this
opinion should not be published.

Joseph Williams contends that prison officials denied him due process of the law because he was subject to two disciplinary hearings classified as "major" in violation of TDCJ-ID's Disciplinary Rules and Procedures for Inmates. Rule I.B.1 states that in a "major" disciplinary hearing, an inmate faces the possibility of losing good-time credit or of moving to a lower time-earning class, risks that an inmate does not run in a "minor" disciplinary hearing. Rule I.B.3 states that: "The final decision as to whether a disciplinary hearing will be classified as major or minor will be made by the officer in charge (Building Major or Captain)."

Prison officer Keith Wagnon classified Williams' first disciplinary hearing as "major," and prison officer Alfonso Castillo classified the second as "major." Neither Wagnon nor Castillo was a building major or captain at the time. Williams filed suit against Wagnon and Castillo under 28 U.S.C. § 1983 (1988), and also named as defendants E.W. Smith, the prison official who presided over both of Williams' disciplinary hearings, and Dan Morales, the Attorney General for the State of Texas. Williams alleged that Wagnon and Castillo's actions amounted to cruel and unusual punishment that deprived him of due process under the law, and requested both punitive and compensatory damages. The district court dismissed Williams' § 1983 claims under 28 U.S.C. § 1915(d) (1988), holding (1) that the language of Rule I.B.3 is not the type of mandatory language that creates a liberty interest, and (2) that even if the language did create a liberty interest,

Williams had received due process in his hearings. Williams appeals, challenging the district court's holding on both grounds.[1]

A district court may dismiss an in forma pauperis complaint "if the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1988). A suit is frivolous under § 1915(d) if it lacks an arguable basis in law or fact. *Denton v. Hernandez*, 504 U.S. 25, ___, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). We review § 1915(d) dismissals for abuse of discretion. *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).

Williams claims that because the language of the prison regulations at issue is mandatory, the regulations create a liberty interest in having a building major or captain classify disciplinary hearings as major or minor. He cites as support the Supreme Court's decision in *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). In its determination of whether a prison guideline created such an interest, the Court in *Hewitt*, "[i]nstead of looking to whether the State created an interest of `real substance,'" such as a loss of good-time credit, "asked whether the State had gone beyond issuing mere procedural guidelines and had used `language of an unmistakably mandatory character.'" *Sandin v. Conner*, No. 93-1911, 1995 WL 260217 at *4 (U.S. June 19, 1995) (quoting *Hewitt*, 459 U.S. at 471-72, 103 S.

---

[1] In his brief on appeal, Williams argues that the prison officials conspired to retaliate against him for having exercised his right to seek redress from the prison grievance system and the courts. We need not address this claim because Williams did not raise it in his original complaint, amended complaint, or *Spears* hearing, and because it is not a purely legal question. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (holding that we will not review issues raised for the first time on appeal unless the issues concern purely legal questions and manifest injustice would result from our failure to consider them).

Ct. at 871).

However, in a recent case, *Sandin v. Conner*, the Supreme Court criticized its holding in *Hewitt*, stating that "[b]y shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at *5. The Court noted that "[c]ourts have, in response, and not altogether illogically, drawn negative inferences from mandatory language in the text of prison regulations." *Id.* The Court continued:

> Such a conclusion may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public. It is a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison. Not only are such regulations not designed to confer rights on inmates, but the result of the negative implication jurisprudence is not to require the prison officials to follow the negative implication drawn from the regulation, but is instead to attach procedural protections that may be of quite a different nature.

*Id.*

For these and other reasons, *see id.* at *6, the Court concluded that "the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id.* While recognizing that states "may under certain circumstances create liberty interests which are protected by the Due Process Clause," the Court held that:

> [Th]ese interests will be generally limited to freedom

-4-

from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* (citations omitted). Thus, under *Sandin*, Williams' claim that the prison regulations at issue create liberty interests has no arguable legal basis because it relies on the allegedly mandatory nature of the regulations' language rather than the nature of the deprivation he incurred as a result of the prison officials' alleged violation of the regulations.

Even if we were to liberally interpret Williams' complaint as containing the argument that Williams was denied due process because the ultimate result of Wagnon's classifying Williams' first offense as major was that Williams' ability to earn good-time credit was impaired,[2] Williams' claim for relief would still have no arguable legal basis. Even if the impairment of an inmate's ability to earn good-time credit is analogous enough to the loss of good-time credit that it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, Williams received the same degree of due process in his hearing that he would have been entitled to have received had

---

[2] We construe liberally the briefs of pro se appellants. *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988). However, because Williams does not mention what punishment he received, if any, as a result of the second disciplinary hearing, we cannot construe his complaint as containing a due process claim based on the deprivation he incurred as a result of Castillo's classifying Williams' second offense as major. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved." (quoting *Price*, 846 F.2d at 1028 (5th Cir. 1988)).

he lost good-time credit as a direct result of the hearing.[3]

                              III

    For the foregoing reasons, we AFFIRM the district court's
§ 1915(d) dismissal of Williams' complaint.

---

    [3]    An inmate punished with the loss of good-time credits must receive:
"(1) written notice of the charges against him at least twenty-four hours before
the hearing, (2) a written statement of the factfinders as to the evidence relied
on and the reasons for the disciplinary action taken, and (3) the opportunity to
call witnesses and present documentary evidence in his defense, unless these
procedures would create a security risk in the particular case."  *Walker v.
Navarro County Jail*, 4 F.3d 410, 412 (5th Cir. 1993) (citing *Wolff v. McDonnell*,
418 U.S. 539, 563-66, 94 S. Ct. 2963, 2978-80, 41 L. Ed. 2d 935 (1974)).  The
district court expressly stated that Williams received "all of his due process
rights" under *Wolff*, and Williams neither challenges this conclusion nor argues
that he did not receive due process under *Wolff*.